## Miller's Estate.

*Lunacy — Weak-minded person — Widow — Election to take against will — Election to be made by court having care of widow's estate — Executor — Party interest.*

1. The guardian of a weak-minded widow cannot elect, in her behalf, to take under or against the will of her husband; such election must be made by the court having the care of her estate.

2. Where what the widow receives under the will is sufficient for her comfortable maintenance and support, considering her age and physical and mental condition, the court will not permit her guardian to elect to take against the will, especially where the effect of such election would be that the real estate thus passing to her would, at her death, intestate, go to her children by a former marriage, to the exclusion of the testator's blood relatives.

3. An executor is not a party in interest as regards the election of a widow under the will of her husband.

Petition of guardian for permission to elect to take against will. C. P. Montgomery Co., Feb. T., 1925, No. 6.

*Larzelere, Wright & Larzelere,* for petitioner.

*H. M. & R. J. Brownback,* for devisees.

SOLLY, P. J., O. C., specially presiding, Jan. 21, 1927.—James S. Miller, the husband of Rachel St. Clair Miller, died in the Township of Marlborough, this county, Dec. 31, 1924, leaving his last will and testament bearing date Dec. 7, 1900, probated by the Register of Wills of this county, and on which letters testamentary have been granted to George M. Miller. Testator was survived by his wife and issue, one son, the said George M. Miller.

By his will, the testator first directed the executor to sell and convert per sonal property into money, and from the proceeds pay his funeral expense and debts, including all mortgage liens on his real estate. He next gav devised and bequeathed to his wife such portion of his real and personal estat as she was entitled to under the intestate law. Then he devised a mill pro erty in Luzerne County, this State, to his son at the valuation of $6000, whic amount he directed should be paid by him to the estate. The remainder of h real estate he directed to be held by the executor and leased, and the n rentals divided and paid, one-third to his wife, during her life, and two-third to his son (and the whole net rentals after the wife's death), during his lif He further directed that, after the death of his wife and son, the said residu of his real estate should be sold and the proceeds divided among the childre of his son, and, in default of children, to the brothers and sisters of the te tator and their descendants by representation.

The intention of the testator, as gathered from the whole will (clumsi drafted as it was), is that his wife should have that portion of his person estate which the Intestate Act of June 7, 1917, P. L. 429, gives to the su viving spouse where there is one child of the decedent, namely, one-half, afte however, the funeral expenses and debts, including mortgage liens, have be paid from the proceeds of the sale thereof; also one-third of the net rentals his real estate, other than the mill property devised to the son. The devise the wife of such portion of the real estate to which she would be entitl under the Intestate Act was wholly changed in the clause of the will follo ing the devise.

On March 2, 1925, the widow was declared to be a weak-minded person decree of this court. The Norristown-Penn Trust Company was appoint guardian of her estate and subsequently qualified. On Sept. 20, 1926, t guardian presented the petition for decree granting it permission to elect behalf of its ward to take against the will of her husband, whereupon a r was granted on the executor to show cause why the decree should not be ma

George M. Miller, as executor and life-tenant, and Ruth Rahn, one of t remaindermen under the will, have joined in an answer to the rule, in whi they aver, in substance, that the widow is about ninety-three years of a resides with one of her children by former marriage in a house owned by he that she has lucid intervals, and that the income which she is entitled to und the will is more than ample for her comfortable maintenance and support d ing the balance of her life, together with the proceeds of the personal est which the will gives her. They further aver that she has a separate esta The executor is not a party in interest as regards the election of a wid under the will of her husband. Those who are beneficiaries thereunder a The son and his daughter are directly interested in the estate, and their obj tion to the right of the widow by her guardian to elect against the will m be considered.

That a guardian of a weak-minded widow, so found by a court of compet jurisdiction, cannot elect, in her behalf, to take under or against the will her husband is clear. "The election of one of two things, when only one be chosen for the lunatic, is undoubtedly a judicial, not a ministerial, act; the choice thus presented by the law is one for a judicious consideration— of judgment to be exercised upon a view of circumstances—by the co which has the care of her estate—giving due consideration to all the adv tages and disadvantages of the choice:" Fidelity Trust Co.'s Appeal, Pa. 9, citing in the opinion Kennedy, Committee of Mahon, v. Johnston, Pa. 451. The right of election is personal, to be exercised by the widow h

self, or, if she be incompetent because of unsoundness of mind, by the court which has the care of her estate, unless there be a statutory power committed to the guardian: Kennedy, Committee of Mahon, v. Johnston, supra. There is no statute in Pennsylvania which gives such power to a committee or guardian.

In determining whether the guardian here should be permitted to elect, in behalf of its ward, to take against the will of her husband, the court, as was stated in Fidelity Trust Co.'s Appeal, supra, is bound always to keep in mind the welfare of the widow; that is the first consideration. The fact that the property and estate of the husband, or a large part of it, will be diverted from his grandchildren should also be taken into consideration, particularly so if what the widow receives under the will is sufficient for her comfortable maintenance and support: Fidelity Trust Co.'s Appeal, supra.

The testimony taken shows certain facts material to the determination of the case. The widow is ninety or ninety-one years old. She was a widow when she married Miller, and has two children by the former marriage. She owns a house at Sumneytown, worth about $4000, which is occupied by her daughter and family, with whom she lives. Her physical health for one of her great age is fairly good. Her mental condition is weak. She requires and receives care and nursing, which her daughter gives her. In his lifetime, the decedent and his wife, present widow, executed a number of conveyances of real estate, reserving and charging thereon, in the aggregate, about $7500, the annual interest of which, at 5 per cent., or $375, is payable to the widow during her life. This she is receiving. The rents from real estate, royalty from a stone quarry, etc., amount in round figures yearly to $100, exclusive of repairs. The widow receives, in round figures, $700 income annually from the estate. The account of the executor, which was filed in the office of the register of wills June 29, 1926, and is awaiting audit by the judge of the Orphans' Court after the disposition of this case, shows a balance of personal estate for distribution, $26,079.26, and a balance of income from personal estate, $3029.29. Under the will, one-half of these balances belong to the widow. There is also an account of rents received by the executor and a balance shown of $1784.66, one-third of which, under the will, goes to the widow. The testator in his lifetime provided, as above stated, that his wife during her life should receive income by way of interest charged on real estate which he and she conveyed to purchasers. By his will he gave her half of his personal estate, after the payment of funeral expenses, debts and mortgage liens, and one-third of the net income of his real estate (except the mill property devised his son) during her life. What she receives should be sufficient for her comfortable maintenance and support, considering her age and physical and mental condition and what the testimony shows would be the expense connected therewith. The conclusion is irresistible that the welfare of the widow will be fully conserved by an acceptance of the terms of the will and a taking under it. That being so, her guardian should not be permitted to elect to take against the will, the effect of which, in the last analysis, would be that an undivided one-half interest in her husband's real estate passing by the provision of the Intestate Act of 1917 would, at her death, intestate, pass to her two children, not of the blood of her husband, to the exclusion of his blood grandchildren.

And now, Jan. 21, 1927, after argument and upon due consideration, the prayer of the petition is refused.

From Aaron S. Swartz, Jr., Norristown, Pa.